Good morning, all. Our first case argument this morning is the United States v. Bania. Mr. Bania? Good morning, Your Honors. May it please the Court, this case is about whether my restitution order was based on actual loss. And it was not based on actual loss. This Court of Appeals in Rodriguez v. U.S. 10-28-16 vacated the same restitution order and remanded for an entry of a new restitution order reflecting actual loss. The Rodriguez case is important because Rodriguez was co-defendant with me in the same trial. So what we have here is two cases with the identical restitution order. On page 52 of the government's brief to Rodriguez, the government respectfully asked the same court to remand Rodriguez's case for the limited purpose of permitting the district court to make an explicit finding of actual loss incurred by Local 743 and to enter a restitution order consistent with these findings. The order in Rodriguez before Chief Justice Esterbrook, Judges Bauer and Kahn states, The parties to this appeal agree that the restitution order was not based on an evaluation of actual loss. Upon reading the agreed order between Rodriguez and the government, I never saw a new restitution order reflecting actual loss. The district court's order does not reflect the restitution issue was either revisited or recalculated. In my case, the government, on page 12 of their brief, state the district court confirmed in an agreed order that the amount co-defendant Rodriguez was ordered to pay in restitution, $864,924, represented the court's finding regarding actual loss suffered by Local 743. If we agreed with you and found plain error and we sent the case back to the district court to determine the union's loss, what do you think the union's actual loss was? Nothing, Your Honor. Nothing was lost. Because of the arguments you've made in your brief? Well, the- Because they were happy to have the work and they were happy to have the work at $15 an hour versus the $35 an hour that was mandated. No, Your Honor. Or they didn't have the loss. The loss was not- there was no loss because the December election- This was the election fraud, right? Yes, sir. With the votes that were- Yes. Okay, all right. The December election was decided by 400 votes. The winning slate won by 400. The illegal amount of ballots were 157. And when you remove those ballots, or if you remove the ballots from the winning slate, add them to the losing slate, you have a difference of 314. The winning slate won by 400 ballots. So the illegal ballots had no consequence and the government even agreed to that. And so without the illegal ballots even being considered, they would have won the election regardless of the illegal ballots. So with them winning the election, without considering the illegal ballots, the government's position was that the president and treasurer's salary should be reimbursed because they illegally won, and that was part of the restitution. Mr. Benioff, the government has told us it's far too late to consider this matter. Mr. Rodriguez took a timely appeal and raised this issue. You did not. Do you want to address that issue for us? Yes, sir. I was incarcerated, and when I finally was released, I researched the restitution matter rather extensively, and then I heard through several employees I used to work with that Rodriguez had won his case. And I was, you know, we did some research and read the briefs and found out that he won the case based on the fact that the intended loss was used instead of actual loss. And at that point, I decided to file the motion and argue the same merits of the case that this same appeals court found and ruled in Rodriguez's favor. And, Mr. Benioff, I apologize. I was thinking of a factual scenario in another case that we have coming up when I asked you about the payment of the union wages. But my question is still the same in terms of what do you think the actual loss is? And are you looking to have the district court review the restitution order and not the forfeiture order? I just wanted to get some clarity on that. Well, I'm speaking strictly about the restitution order. There was no monetary loss to the union because had the opposing slate won, they would have been paid those salaries. Can you explain why you didn't appeal challenging the restitution order earlier? I tried. I wanted to file an appeal, but I was discouraged because I was told that if you appealed, a judge will get mad and sentence you to more time. I was already facing 97 to 121 months. And based on the facts of the case, it was told to me that I would probably receive a lot less time and to leave the matter alone. And later on, we discussed how much the appeal would cost. And at that point, it was never revisited. Mr. Benioff, I just want to follow up on that. You said you were concerned about the increase in sentence if you appealed? Yes, sir. Well, you were sentenced and then you were advised of your right to appeal. Is that right? I asked... At the conclusion of the sentencing by Judge Koukouras, did he not advise you of your right to appeal? Sir, it might have happened. I don't remember just walking out... Yes, because I'm concerned that you said in some way your right to appeal was chilled by a judge in some way considering increasing your sentence. Well, I spoke to the attorney and I said, I want to appeal. I said, why should we pay back money that nobody ever received? Nobody took anything. We're paying back salaries for two people who worked for three years. And he said, well, right now the restitution is in question. He advised me not to push the issue. And I said, well, how is it right? And we kept having that discussion. And then I said, so we appeal and lose. What's the point? Sir, I'm out of time. I just want to ask one question. Your co-defendant did file his appeal. Were you aware that your co-defendant filed the appeal? No. He said he was not going to appeal. And what had happened, his attorney filed the appeal immediately after we were found guilty. And the appeal lay dormant for over a year before the court inquired to Rodriguez, what are you going to do with this appeal? And it sat there. And then finally, when he was released, he contacted the court and then filed a form of PAPAS. And then the case proceeded. Okay. You have some time for rebuttal, Mr. Benninger. Three minutes, sir. Thank you. Thank you. Ms. Bonamici. May it please the court, good morning. As Judge Hamilton pointed out, the government has argued and is the case that the argument that's raised by the defendant here, which focuses on the initial sentence imposed by the district court, is something that could not be addressed by the district court either by virtue or by any means by that time and certainly could not be addressed through a motion for termination of the restitution obligation. That is the main point. And as far as the history of this case goes and the argument that the restitution amount was founded on a finding of intended loss, that's also inaccurate. There was a review of the record at the time of Mr. Rodriguez's appeal indicated that the record was a little muddy about that. It was very difficult to determine what the district court had actually found. The government's brief went through chapter and verse all of the statements that were made and argued that in fact it appeared that the court had found or had based the restitution and the forfeiture figures on actual loss rather than intended loss. But given the lack of clarity in the record, had agreed that remand would be appropriate. And at that point, at the time of remand, a settlement was reached with the or an agreement was reached with the defense and it was based not at all on the question of actual or intended loss. In fact, the court's order made clear that the original amount was based on actual rather than intended loss, but rather on new arguments raised by the defendant based on that particular defendant's minor role and his limited role. And that's all about Rodriguez? That's all about Rodriguez, right. Mr. Bonilla, in contrast, was involved straight through the entire process, was involved in the fraud related to both the October election and the December election, unlike Mr. Lopez, another defendant in the case. And he was convicted on all counts, unlike Mr. Rodriguez, who was not convicted on any counts based on the October election. So for all of these reasons, the court has no further questions. The government would ask that the district court's decision be affirmed. Thank you, Ms. Bonilla. Mr. Bonilla? Okay, Your Honors, the loss for the restitution purpose should have been based on our offenses. And the outcome of the December election was not determined by the illegal voting. The government agreed to it and the actual loss would have been the two salaries had the illegal voting caused them to win. It did not cause them to win. And I don't understand how we have to pay back money for two people who worked for three years that were elected properly. And without finding actual loss, the district court, they had no authority to order the restitution. The actual loss was agreed on by the government that the court never founded. The district court relied on the PSR to determine the intended loss. And they admitted as much, even the government. In their statement, they reaffirmed that they were working on intended loss, not actual loss. We have two cases here that are both the same. Same circumstances, the attorney for Lopez, our other co-defendant, pleaded the restitution argument and all our attorneys agreed. So in my situation here, I know that the MVRA Act is final judgment, but notwithstanding the fact that it subsequently may be corrected, appealed, modified on remand, amended or adjusted, I believe my case qualifies for such treatment based on Rodriguez. And in closing, with Rodriguez v. U.S. already decided in this court, I would respectfully request your honors vacate the restitution order or go a step further and reverse the district court's decision. Thank you. Thank you. Thank you. The government did well, and the case is taken under adjournment.